**Bobby H. MITCHUM, Petitioner,**

v.

**TENNESSEE VALLEY AUTHORITY, Respondent.**

**Appeal No. 84–1268.**

United States Court of Appeals, Federal Circuit.

Feb. 27, 1985.

Nichols, Senior Circuit Judge, filed a concurring opinion in which Pauline Newman, Circuit Judge, joined.

R. Jan Jennings, Branstetter, Kilgore, Stranch & Jennings, Nashville, Tenn., for petitioner.

Harriet A. Cooper, Knoxville, Tenn., argued for respondent. With her on the brief were Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Associate Gen. Counsel and Justin M. Schwamm, Sr., Asst. Gen. Counsel, Knoxville, Tenn.

Before RICH, Circuit Judge, NICHOLS, Senior Circuit Judge, and NEWMAN, Circuit Judge.

RICH, Circuit Judge.

This appeal is from the final decision of the Merit Systems Protection Board (board), 20 M.S.P.R. 117, sustaining the Tennessee Valley Authority (TVA) action removing petitioner from his position as a Heavy Equipment Operator. The final order of the full board modified the presiding official's decision of May 21, 1982, which mitigated the removal to a thirty (30) day suspension. We reverse the decision of the full board and order that the presiding official's decision be reinstated.

*Background*

Petitioner Bobby Mitchum (Mitchum) had been employed as one of twenty-seven heavy equipment operators at TVA's Cumberland Steam Plant for thirteen years. His duties included operating equipment such as tugboats, cranes, bull-dozers, and a large loading device commonly called a "panscraper" or the "Wabco." Work assignments were made orally by foreman Fred Dodson (Dodson) when the operators gathered at the start of the shift at 7:30 each morning.

On November 13, 1981, foreman Dodson instructed Mitchum to operate the Wabco for the day. Mitchum first refused the assignment. Dodson then conferred with his immediate supervisor, N.J. Lewis (Lewis), who instructed him to make the Wabco assignment again in front of witnesses. When Dodson made the work assignment a second time, Mitchum again refused it and requested to be put on sick leave.

Mitchum was then instructed to report to the nurse's clinic for an examination, then to Lewis' office. At the nurse's office Mitchum complained of vomiting and was found to have a temperature of 99.4 degrees. He reported to Lewis' office after seeing the nurse, but indicated that he felt too sick to wait to see him.

Mitchum then left the plant and went directly to the office of a private physician,

Dr. Douglas W. Ligon. Dr. Ligon found that Mitchum "had vomiting on several occasions while in the clinic, was treated with medications, given an injection and advised to return to his home two days at bed rest." The doctor also said that Mitchum was "[q]uite ill today and unable to work Friday and Saturday, possibly Sunday due to illness."

On December 3, 1981, the agency advised Mitchum of its intention to remove him from employment for twice refusing to operate the Wabco on November 13 and for leaving the plant before obtaining the approval of his supervisor. The December 3 advance notice also advised him that if the facts forming the basis of the current charges were sustained, two other incidents in which petitioner had refused to perform assigned tasks would be considered in determining his penalty. On December 21, 1981, the specifications contained in the advance notice were sustained, and petitioner was informed that he would be removed from the service, effective January 5, 1982.

Mitchum appealed the agency's decision to the Atlanta Regional Office of the board. The presiding official found that the TVA did prove the charge against Mitchum, that the work assignments were properly made, and that Mitchum refused the assignment. The presiding official also found that "[w]hile there is evidence that the appellant was sick on the day in question, the preponderance of the evidence suggests that the appellant refused the work assignment before any mention of his being incapacitated." However, in light of the evidence indicating Mitchum's incapacity to perform the work assignment that day, the presiding official ordered that the TVA's action be modified, and that a thirty (30) day suspension be substituted in lieu of the removal.

March 22, 1984, on appeal by the TVA, the full board modified the decision of the presiding official and reinstated the TVA action removing Mitchum from his position. In making its decision, the board considered Mitchum's "past disciplinary record

for insubordination" and found that removal was a reasonable penalty under the circumstances, "[e]ven though there is some evidence that appellant may have been ill at the time of the currently charged incident."

## OPINION

■ The Civil Service Reform Act of 1978 (Reform Act), Pub.L. No. 95–454, 92 Stat. 1111 (1978) and the board's regulations require an agency to prove the reasons for removal by a preponderance of the evidence. 5 U.S.C. 7701(c) and 5 C.F.R. 1201.56(a)(1). Under §§ 7513 and 7701, the agency must also prove by a preponderance of the evidence that the adverse action was taken "for such cause as will promote the efficiency of the service," and that the disciplinary sanction imposed in the particular case at issue was properly selected for reasons relevant to the promotion of efficiency of the service. *Douglas v. Veterans Administration*, 5 MSPB 313, 333–34, 5 M.S.P.R. —— (1981).

■ *Douglas* also requires the presiding official to make a separate finding on the appropriateness of the penalty imposed in connection with an adverse action, and suggests a list of factors which might be considered in reaching such a determination. Among these factors are the nature and seriousness of the offense; the employee's job level and type of employment; the employee's past work record, including level and type of employment; the employee's past disciplinary record; the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability; the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties; potential for the employee's rehabilitation; mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice, or provocation on the part of others

involved in the matter; and the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others. *See Douglas,* supra, 5 MSPB at 332, 5 M.S.P.R. at ——. The presiding official is required to ascertain whether the agency has responsibly balanced the relevant factors in the individual case and selected a penalty within the tolerable limits of reasonableness.

After reviewing the record evidence and weighing the *Douglas* factors in the agency's case against Bobby Mitchum, the presiding official held that the TVA had proved the charge against petitioner, but found that the penalty of removal could not be supported. While recognizing "the seriousness and implications of the appellant's conduct," the presiding official felt that "the fact that the appellant was sick on the day in question greatly deminishes [sic] its effect." Although the agency disputed the fact that Mitchum was actually incapacitated that day, the presiding official found that the evidence presented, "including the nurse's statement, the testimony of appellant, and appellant's hearing exhibits 1, 3 and 4" (a composite of a letter and doctor's excuse from Dr. Ligon, and empty prescription bottles for immodium and WANS, both dated November 13, 1981 and prescribed by Dr. Ligon) substantiated the fact that petitioner was sick on the day in question. The TVA made no contrary showing, but suggested that the doctor's statements could not be believed because the doctor had given erroneous information in the past. The presiding official found that TVA's suspicion was not sufficient to overcome the otherwise corroborative evidence of incapacitation, and held that the penalty of removal could not be sustained in light of a preponderance of the evidence indicating the employee's incapacity to perform the work assignment. The presiding official went on to mitigate the penalty imposed on petitioner by the agency to a thirty (30) day suspension.

The full board, in reinstating the removal action, "[e]ven though there is some evidence that appellant may have been ill at

the time of the currently charged incident," apparently did not believe the evidence of Mitchum's illness. The board's determination seems to have been primarily based on the fact that Mitchum did not claim illness until he had refused his work assignment for a second time.

■ Our standard of review for MSPB decisions of this sort is very limited. The agency's action in these cases must be affirmed unless it is found to be:

1. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

2. obtained without procedures required by law, rule, or regulation having been followed; or

3. unsupported by substantial evidence.

*Hayes v. Department of the Navy,* 727 F.2d 1535, 1537 (Fed.Cir.1984).

The presiding official found that Mitchum's illness was a substantial mitigating factor. The board apparently determined that evidence of his illness did not amount to a significant mitigating factor in reinstating the TVA's removal of Mitchum.

■ A decision to dismiss a federal employee must have a "rational basis supported by substantial evidence from the record taken as a whole." *VanFossen v. Dept. of Housing & Urban Development,* 748 F.2d 1579, 1580 (Fed.Cir.1984); *DeWitt v. Department of the Navy,* 747 F.2d 1442, 1444 (Fed.Cir.1984); *Hayes,* supra, 727 F.2d at 1537. There is no rational basis to support the board's decision not to mitigate the penalty imposed on Mitchum in light of his illness. We agree with Mitchum that the failure of the board to give substantial weight to the evidence of Mitchum's illness amounts to an abuse of discretion by the board. However, there is both a rational basis and more than substantial evidence to support the presiding official's determination that petitioner was incapacitated on the day in question.

The decision of the full board is therefore *reversed,* and the decision of the presiding official, mitigating Mitchum's penalty to a thirty (30) day suspension is reinstated.

REVERSED.

NICHOLS, Senior Circuit Judge, concurring, with whom NEWMAN, Circuit Judge, joins..

The presiding official determined that Mitchum committed some kind of an offense in refusing to work, even though he was too sick to work. This can only have been Mitchum's omission to say he was sick—though he really was—on the occasion of his first refusal. The board may disbelieve Mitchum was ever sick at all, as our opinion charitably assumes. One cannot be sure, as the board suggests this by innuendo rather than direct statement. It may believe he got sick only after the first refusal, though before the second, or later in the nurse's office, or the doctor's. The only thing clear is that he was not sick badly enough, or else not soon enough, to satisfy the board. I join in the opinion because any alternative interpretation of the board's cryptic remarks makes them even less reasonable.

Only the agency petitioned for review. Mitchum, in his appeal to this court, has not contested the appropriateness of the 30-day suspension. We do not, therefore, have to determine whether the efficiency of the service reasonably could be held to require a 30-day suspension.

The rule of employee behavior the case teaches is apparently that when you refuse to do a job on the just ground of being sick, you must say you are sick the first time you receive the order, not the second. Timing is all important. By violating this rule you cause an unedifying scene, and on TVA time to boot.

While the panel has elected to publish its decision, and I agree, I think that as a precedent it should be restricted to its own peculiar facts, or close to them.